We'll hear argument next in Case 16-1276, Digital Realty Trust v. Somers. Mr. Chamnagam. Thank you, Mr. Chief Justice, and may it please the Court. The Dodd-Frank Act provides incentives to and protections for whistleblowers, that is, individuals who have reported securities law violations to the SEC. The question presented in this case is whether the statutory definition of whistleblower applies to the subsection of the statute that protects whistleblowers from retaliation for engaging in certain types of conduct. The answer to that question is yes. By its plain terms, the statutory definition applies to the entirety of the section, including the anti-retaliation provision. Far from being absurd, that plain-text interpretation is entirely consistent with the history and the structure of the whistleblower provisions, and with Congress's overarching objective of promoting reporting to the SEC. It also preserves the balance between the Dodd-Frank Act and the Sarbanes-Oxley Act, which already provides broad protections to whistleblowers who report internally. And even if the statute were somehow ambiguous, the SEC's interpretation is not entitled to deference because its rulemaking was procedurally defective. This Court should reject the interpretation of the Ninth Circuit, and it should reverse the judgment of the Ninth Circuit in this case. Now, by its terms, the Dodd-Frank Act's anti-retaliation provision prohibits retaliation only against a particular category of persons, namely whistleblowers. And the statutory definition of whistleblower, again by its terms, applies in this section. That section, of course, indisputably includes the anti-retaliation provision as well as the award provisions. And therefore, the anti-retaliation provision only applies to individuals who meet the statutory definition of whistleblower, again, individuals who have reported securities law violations to the SEC. Now, as I said at the outset, we believe that that's consistent with the history, structure, and objectives of the whistleblower provisions. As to the history, perhaps the most telling fact is the fact that an earlier version of the anti-retaliation provision reached all employees. Congress then amended the provision to apply to a narrower set of individuals, whistleblowers. As to the structure of these provisions, in our view, the anti-retaliation provision protects the very class of persons to whom the award provisions provide incentives. And therefore, the anti-retaliation provision, in a very real sense, works hand-in-glove with the anti-retaliation, with the award provisions. Ginsburg. What about employees who must report internally before they can report to the SEC? So, Justice Ginsburg, where an employee reports internally and then suffers an adverse action in the immediate aftermath of doing so, the Sarbanes-Oxley Act will provide protection. In our view, the Dodd-Frank Act's anti-retaliation provision only applies to individuals who report to the SEC, and to be sure, it applies to those individuals really without regard to the reason for retaliation. So just to make clear what our affirmative interpretation of the anti-retaliation provision, and in particular the third clause is, the third clause, which was the last of the clauses to be added, reaches a situation in which an employee in fact reports to the SEC, but is retaliated against because of an internal report or perhaps a report to another governmental entity, and precisely because a report to the SEC will often be confidential, there may very well be cases in which the reason for the retaliation is not the report to the SEC, which is covered by the first clause, but is instead some other report, such as an internal report. Now, the primary argument on the other side as to why our interpretation is somehow absurd or as to why this is one of those exceptional circumstances where the Court should not pay heed to the unambiguous language is that there are cases that would be covered by the third clause. But I don't think that there's really any basis for that conclusion here. As the government recognizes in its brief, around 80 percent of individuals who report to the SEC also report internally. And so contrary to the reasoning of really the leading case on the other side, the Second Circuit's decision in Berman, we know that there certainly is a category of employees who report in both ways. So then the question becomes whether, in fact, there are very few cases in which an individual is able to get to the step of reporting to the SEC. The argument on the other side is that when an employee reports internally, retaliation will come so quickly that they will not be able also to report to the SEC. Sotomayor Crist, can you please tell me, under your reading, what we make of subdivision H1a2? It protects from discrimination an employee who's been fired for initiating, testifying in, or assisting in any investigation, or judicial or administrative action of the commission. Under what law is the employee who's called by the SEC after another employee reports the violation and assists the SEC in its investigation? Under your reading, that employee is not protected. And I don't know that that employee is protected under the Sarbanes-Oxley provision either. The only thing that would protect that particular employee is the government's reading. So, Justice Sotomayor, I think you point up the reason why we actually think that our interpretation must be correct, and that is because the first and the second clauses in subsection H1a actually were already in the statute at the time that Congress made the judgment, to which I adverted a couple minutes ago, to replace the broader term, employees, contractors, or agents, with the narrower term, whistleblower. Now, it may very well be that an individual in your circumstance is not covered by the Sarbanes-Oxley Act. But the critical point is that they wouldn't be covered by this Act either. They wouldn't, but in our view, in that circumstance, the decision by Congress to replace employees with the narrower term, whistleblower, in fact, takes effect. In other words, if you have a circumstance in which you have Employee 1, who, in fact, reports the securities law violation to the SEC, and Employee 2, who merely testifies in a subsequent SEC proceeding, the replacement of employee with whistleblower in fact knocks Employee 2 out of the statute. But we know that that was a considered judgment made by Congress when the Senate replaced the term employee with whistleblower. The primary anomaly on which Respondent and the government relies, the purported anomaly, relates not to the second clause, but to the third clause. Their argument is that because the third clause was added at the last minute, Congress somehow was not aware of the fact that it was adding that clause to a statute that already by its terms limited the protected privacy. Sotomayor, S.C. has always been arguing, they'll speak for themselves, but they've always been arguing that whistleblowers should be given a natural reading. I'll question them on where they get that, because I'm not sure there's a natural reading. But assuming I accept that proposition, isn't the fact that a natural reading would cover that second employee and potentially the third employee who is required to report internally first, isn't that reason enough? Because there are two provisions that would be rendered partially nulgatory to read at the government's level? They would not be so rendered, Justice Sotomayor, and let me address that, and then I do also want to address the premise about there being some ordinary meaning of whistleblower. Under our interpretation, all three of these clauses have meaningful effect. In other words, our primary submission is that what Congress was trying to do in the anti-retaliation provision was to provide broad protection to individuals who report securities law violations to the SEC, whatever the reason for the retaliation. And then Congress spoke quite broadly in these three clauses as to the reasons for retaliation. Once you have reported a securities law violation to the SEC, if you're retaliated against for that report, you're covered. If you're retaliated against for your subsequent cooperation in SEC proceedings, you're covered. And if you're retaliated against for some internal report or some other report, you are covered. And again, I do think that it is critical to keep in mind that there is a broad protection. Kagan. But isn't that disjunction quite odd, right, a typical anti-retaliation provision, you would think, well, if I report internally and I'm fired for it, then I get my protection. But here you're saying they don't get protection, except if they do something completely unrelated. They might have made a report to the SEC about a completely different topic. They might have made it 10 years earlier. And that's going to give them protection, even though they haven't been fired for anything remotely to do with that. So, Justice Kagan, let me explain why I think that makes sense. And I do want to address this purported anomaly with our interpretation with regard to the lack of a nexus between the internal report and the SEC report. I think more generally, the reason why this regime makes sense is precisely because Congress adopted this more specific regime that provides heightened protection to, in the words of the title of the statute, securities whistleblowers against the backdrop of a broader regime for whistleblowers more generally in the Sarbanes-Oxley Act. And we know that Congress wanted those two anti-retaliation regimes to coexist, because in the very same section of Dodd-Frank that added the Dodd-Frank anti-whistleblower provision, Section 922, Congress also amended and to some extent expanded the protection for whistleblowers more generally in the Sarbanes-Oxley Act. Those are subsections A and C of Section 922 more generally. Now, what Respondent and the government are asking you to do, to use the metaphor from the last argument, is to view the third clause in particular of the anti-retaliation provision as the proverbial elephant in a mouse hole, to say that when Congress added the third clause, it was essentially adding an all-purpose anti-retaliation provision. And I think that if that was what Congress was doing, it would at a minimum substantially diminish the role of the Sarbanes-Oxley Act anti-retaliation provision, if not render it effectively superfluous. And indeed, there are other things that Congress is trying to do, and I'm not going to go into that. But if I could just, I guess I just don't understand what the theory is. There are two employees, and they both internally report, and they're both fired. And one of them, tough luck, but the other one is going to get protection because he's filed a report with the SEC about some different matter entirely 10 years earlier. Why does he get extra protection? So Congress was trying to create incentives for reporting to the SEC, and it did so by providing a carrot in the form of the incentives in the award provisions and a stick in the form of the anti-retaliation provision in cases where that employee, employee number two, suffers retaliation. And again, really without regard to whether the retaliation was because the employer happened to find out about the SEC report specifically and retaliate on that basis. But you do raise the question of this purported anomaly, because you could potentially have a case in which the employee makes a report to the SEC and then reports some entirely unconnected conduct internally. There could be some gap of time between those two things. Now, in our view, it's entirely possible that Congress might very well have made the judgment that it wanted to provide protection, that it wanted to provide a broad incentive to employees who suffer retaliation over time and for a wide variety of disclosures. But to the extent that the government in particular sort of cites this hypothetical where, say, 5 years has passed between the internal report and the report to the SEC, any incidental overbreath with our interpretation pales in comparison to the wild overbreath of Respondent and the government's interpretation, because Respondent and the government would concededly cover cases in which an employee makes a disclosure that bears no relation to a securities violation. And tellingly, the SEC itself in the regulation at issue here seemed to recognize that absurdity, because at the same time that the SEC unexpectedly dispensed with the requirement of reporting to the SEC, it sought implicitly to narrow the category of disclosures that are covered by the third clause to disclosures involving securities law violations or Section 1514a of Sarbanes-Oxley. And I think that that was a recognition that there are many, many hypotheticals that one can posit under Respondent's and the government's interpretation that really have nothing to do with the securities laws at all. And so, again, our core submission here, Justice Kagan, is that this is a very specific subset of cases that Congress was targeting in the Dodd-Frank Act, and much more specific than the much broader protection that was provided under Sarbanes-Oxley. Breyer. The question I would have for both sides, really, is what do you think? Is there any – could the SEC here promulgate a regulation that would define the manner of reporting to the SEC? Which manner would include the class of cases where the report or the information goes to an audit committee under circumstances such that were the audit committee and others to do nothing about it, it would likely end up at the SEC's window? So I don't think that the SEC could do that. Why not? Our core submission is that the SEC cannot dispense with the statutory requirement of reporting to the SEC. It doesn't. It doesn't. That's why I worked this out, perhaps wrongly, but in a way that at least arguably doesn't. It is providing for – it's defining a manner of reporting to the SEC, and the manner includes just what I said. Report to an audit committee under circumstances where if no action is taken, it is likely to end up at the SEC. I mean, it might not physically get there, but nonetheless, this is a class of cases where quite likely it will get to the SEC. What's wrong with that? I mean, it actually has to get there. I think that the whistleblower – So if they're caught on the way because they don't get there because it's a snowstorm, it doesn't count. Under the statutory language, and this is in the definition in subsection A-6, the whistleblower has to provide information to the commission. Now, you're right that it goes on to say, in a manner established by rule or regulation by the commission. And I would submit, Justice Breyer, that the commission does have broad authority to issue a regulation concerning how that information has to be provided. And indeed, the commission has done just that in Rule 21F-9 with regard to the award provisions. And it says that you have to report either online or by using a particular form. We have no quibble with that. But what I don't think you can do, contrary to the submission in one of the amicus briefs, is to use the in-the-manner language to define away the separate requirement of reporting to the commission. That is a distinct statutory requirement, and again, I don't think that the commission really has any leeway in that regard. And I do think that the way that the commission went about the rulemaking here is telling. As the Court will be aware, in the proposed rule, the SEC issued a rule that merely tracked the statutory definition, and the SEC provided no indication in the notice of proposed rulemaking that it was contemplating the possibility of dispensing with that requirement. Ginsburg. Weren't there comments to that effect? There were three comments out of the 240 or so that seemed to suggest that the commission might want to do that. But I don't think that the mere fact that there were a small number of comments that suggested that is an indication that interested parties as a whole were on notice that this issue was potentially in play. There were certainly some who thought that that would be desirable. But there is nothing in the notice of proposed rulemaking, and to the extent that Respondent and the government cite some language that suggests that the commission was considering broadening the application of the anti-retaliation provision and inviting comments to that effect, the very previous sentence in the notice of proposed rulemaking indicates that the commission intended to retain the requirement of reporting to the SEC. So again, there was no notice until such a time as the commission came out with its final rule and converted the one statutory definition of whistleblower into two. And I think that there can be no better evidence of how nakedly atextual Respondent and the government's interpretation is than the final rule itself, which contains these two separate definitions, the one for purposes of the award provisions and the other for purposes of the anti-retaliation provision. Some law on this, I don't know, Justice, you put your finger on something I don't know what to do with. I thought the argument made below was a plausible argument that they have made a rule like the one I was just suggesting. And then you come back and say, well, the rulemaking proceeding was no good, they didn't tell anybody they were going to do this, and this is way beyond da, da, da. And then they say, but you should have raised this earlier. Now, there is some law on when you have to raise an attack on a rule established by a commission, and there is some time limit. And then there's no answer that I've found. I don't know how that works. What am I supposed to do with that? Have they abandoned all that here or what? Sure. Justice Breyer, let me address that. And I do, by the way, want to come back to Justice Sotomayor's question about the ordinary meaning of whistleblower. You don't have to do that. Well, let me address your question first. Our submission, our core submission to the Court is this is a simple case that can be resolved at step one of Chevron. The terms and reach of the statutory definition are unambiguous, and there's certainly no absurdity here. If this Court were somehow to get to step two of Chevron, we have an argument under Encino Motorcars that this Court should not afford Chevron deference because the rulemaking was procedurally defective for the reasons that I've just mentioned. The other side rightly points out that we did not make that argument below. We don't believe that it is necessary for us to have made that argument below, because this is just another argument in response to their claim that there should be Chevron deference here. And parenthetically, this Court's decision in Encino Motorcars came down while the briefing was ongoing in the Ninth Circuit. But as to the argument concerning timing, because there is an argument made by the Respondent, though not by the government, that we're somehow out of time here. Let me explain why that's not true. Respondent relies on section, I believe it's 2401, which is the general 6-year limitations period for claims against the government. That is a limitations period that is applicable in ordinary APA actions. We are not raising a freestanding APA claim here. Our argument consistent with Encino Motorcars is simply an argument that the rule should not be given Chevron deference. It's not even an argument that the rule is somehow invalid. It's an argument that at most the SEC is entitled to Skidmore deference here. And so we don't think that it would be appropriate to apply the 6-year limitations period here, and to the extent that Respondent relies on the D.C. Circuit's decision in a case called JEM Broadcasting, that was a case in which a regulated party was essentially arguing for invalidity. They were not making the type of argument we're making here. Now, with regard to the ordinary meaning of whistleblower, because I do want to finish up my answer to Justice Sotomayor's question from now some time ago, I think we would concede that the term whistleblower naturally refers to an individual who reports misconduct. But I don't think that we would concede that there is an ordinary meaning as to the person to whom the misconduct is reported. I think, if anything, if you look at sources like Black's Law Dictionary, they seem to suggest that you have to have reporting to a government authority. And so, you know, I think that it is telling that, contrary to the Solicitor General's submission, Congress really is not using the unadorned term whistleblower very often in statutes. It's either using a different term or it is providing a definition for whistleblower. And I think that that is, again, precisely what Congress was doing here. Congress consciously made the decision to replace the term employee with the term whistleblower, and Congress added the third cause, which is conceivably the broadest of the three causes, to a statute that already used the term whistleblower. And this is just not one of those paradigmatic cases in which the text points in one direction, but there is legislative history to the contrary. There is really no actual legislative history with regard to the third clause, and it is quite telling that the government in its brief can muster no legislative history other than an article from Law 360 that it cites in footnote 15. And if you take a look at that article and you take a look at the underlying e-mails that are cited in that article, there is really no indication even that the individual who allegedly proposed the third clause thought that what he was doing was extending the statute beyond the statutorily defined category of whistleblowers to individuals who merely report internally. Unless the Court has any further questions, I think I will reserve the balance of my time for rebuttal if needed. Thank you. Roberts. Thank you, counsel. Mr. Geiser. Geiser. Thank you, Mr. Chief Justice, and may it please the Court. The true elephant in the mouse hole here would be using the indirect use of the word whistleblower in subsection H to limit what is otherwise a broad and sweeping clause that aligns Dodd-Frank's amendment with the modern trend of major whistleblowing legislation. Now, to start with Justice Kagan's point, it is actually, it is exactly true that Petitioner's reading does create a serious anomaly. If anyone reports to the SEC at any time, it could be half a decade or a decade earlier, on a completely unrelated issue, they are a whistleblower for life. So any report they make at a later time is protected, even if the information doesn't get to the SEC. But I think there is actually an even greater anomaly. My friend suggests that Congress, all they really were concerned about here was getting information to the government, to the SEC. Take someone who reports internally, as they are often required to do under Sarbanes-Oxley, and they are immediately terminated. And then the second they walk out of that meeting, they report to the SEC. They even use the right fax number and they use the right form. That way, the SEC has exactly the information that Congress supposedly wanted it to obtain. That person isn't protected under this provision. Breyer. He's protected under Sarbanes-Oxley, isn't he? Yes, Your Honor. So on all the differences that he has today, maybe a shorter statute of limitations, you have to go through an exhaustion procedure. So what is the anomaly about saying where you are reporting directly to the SEC, you are going to have a shorter, you are going to have a longer statute of limitations, and you don't have to exhaust? But if it's an indirect thing, you do. Why is that anomalous? It's highly anonymous, Your Honor. The entire reason that Congress added Clause 3 is to strengthen the remedies in Sarbanes-Oxley. Sarbanes-Oxley proved in the cases where they report to the SEC, which is what it says. And it strengthens it, it just means you don't have to exhaust. So what's the big deal? But it would strengthen it in a way that would not protect people who occasionally do report to the SEC and protect people who later don't report to the SEC. That doesn't make any sense. And so I – and the other thing it would do, too, is it puts the employer in a position of being entirely unaware of the critical factor that activates or takes away protection under Clause 3. So it's a – Sotomayor, I'm sorry, the employer is rarely knowledgeable about the SEC filing. I believe the SEC rules require confidentiality of the filing. That's exactly right. So virtually always an employer is going to fire someone because of internal reporting, not because of SEC reporting. That's right, Your Honor. But what that really shows is that this is a highly unusual form of an anti-retaliation statute. Anti-retaliation statutes are designed to deter specific conduct. And here we know that Congress was focused on deterring specific conduct because subsection H is framed in terms of a prohibition on employers. It says, employer shall not take certain acts against people engaged in certain conduct. The use of whistleblower is entirely indirect. It would be highly unusual for Congress to think that they were trying to bolster remedies in Sarbanes-Oxley, because they did realize these were highly ineffective. There is evidence in the record, we do cite studies in our brief, that show that Sarbanes-Oxley generally was providing relief in under 10 percent of cases. What about this case? Did Summers avail himself of Sarbanes-Oxley or just Dodd-Frank? Only Dodd-Frank, Your Honor. He missed the limitations period for Sarbanes-Oxley, which will happen frequently because not everyone who's not a lawyer is aware of all the rights under Federal law. The entire point that Congress had made in this statute, and consistent again with every piece of modern major whistleblowing legislation, is to protect internal whistleblowing. The entire securities framework is hinged on internal whistleblowing. Everyone thinks it is better to have people go first. I'm just stuck on the plain language here, and maybe you can get me unstuck. But how much clearer could Congress have been than to say in this section the following definitions shall apply, and whistleblower is defined as including a report to the commission? What else would you have had Congress do if it had wanted to achieve that which your opponent says it achieved? Your Honor, this Court doesn't read language like that in isolation. It has to read it against a backdrop of the rest. I'm asking what would you have had Congress do? Well, I think in this what they could have done, and given all the anomalies that this would produce and how contrary this is to the modern trend of legislation, they'd have to be a lot clearer than they were here. Clearer than in this section the following definitions shall apply? How much clearer could they have possibly been? That is the same language in utility air where the definition of air pollutant was in this chapter, and in Duke Energy it gets even worse. In that case, shall just means maybe sometimes? Not at all. Let me give an example to, I think, prove the point. Suppose that in subsection H Congress included a parenthetical after the word whistleblower that said as this term is used in Sarbanes-Oxley or as this term is used in its ordinary idiomatic sense. No one at that point would think that the definition in subsection A-6 applies. Our contention is that the clear meaning from the text, the context, the structure, the purpose, the history of this provision is tantamount to that kind of error. So in this case, utility air, the difficulty of applying the defined term in that case strikes me as so much more insurmountable than in this case. I think it could be more or less, Your Honor, but I think the important point here is that having an incentive to skip over internal reporting would be disastrous to the modern scheme of securities regulation, which turns on internal reporting. Under my friend's view, that's exactly what's bothering me. You're using, and that's why I think I'd like a little elaboration on my first question, because I don't put as much, I'll be perhaps a little bit more willing to go with your not clear language maybe. But it seems to me to make sense what Congress was trying to do to follow the language. Why? Because the ordinary whistleblower is protected under Sarbanes-Oxley. He just has to have some exhaustion. And it's a shorter statute of limitations. And if you want to make it tougher, which they do, it makes sense in a statute that's mostly about awards for reporting to the SEC to say it's where the SEC is going to be directly involved, that we cut out the need to exhaust, that we cut out the need. While if, in fact, you read it your way, we've basically eliminated Sarbanes-Oxley because everybody would bring it under this provision. Now, that's why when you say, you know, this is totally anomalous, this is a disaster, et cetera, et cetera, I say, well, you haven't shown me that yet. So maybe you want to spend one minute on doing that. Sure. I mean, first, Your Honor, this would not eliminate the Sarbanes-Oxley remedial scheme, even though it was largely ineffective. There could be some people who would prefer it because they don't have a lawyer and they prefer to have the assistance of OSHA. But more importantly, the Petitioner's reading would undermine not the remedial scheme, but the entire regulatory scheme of Sarbanes-Oxley. Sarbanes-Oxley requires people to disclose internally. What Congress wanted was as a – this is the ordinary progression of getting information to the government. You first give the corporation a chance for self-governance. You give them the chance to swiftly and efficiently address the problem and to make sure that they remediate whatever the violation is. If they refuse to do it, then you go to the government. Sotomayor, is every employee obligated by law to report a violation, or is it only certain employees, lawyers and accountants and others, who are affirmatively obligated to report? Some employees, like lawyers and auditors, do have the affirmative obligation. Other employees may not have the legal or regulatory obligation, but they often do have a corporate obligation under the corporation's credit conduct. All right. So why would Congress want to treat lawyers and accountants to the generous provisions of the whistleblower statute when they have an obligation anyway? They're basically being incentivized to do what they're already legally obligated to do. They've got a protection, Sarbanes-Oxley. Why put them under the whistleblower statute as well? Because Congress saw examples, and they saw this in Enron, where people were deterred from fulfilling those roles and disclosing the information and whistleblowing because they didn't want to be terminated. And the threat of termination And that was Sarbanes-Oxley. And Dodd-Frank And that's the statute Congress provided to incentivize them to do what they were legally obligated to do. Sure. And Congress specifically singled out the protections in Sarbanes-Oxley, something that needed to be bolstered in Dodd-Frank. So I don't think it's fair to divorce the two from each other. Well, I see Dodd-Frank as expanding the category of people, not limiting or expanding it to include people who are already included. Well, it does expand people in some situations, like with self-regulatory organizations who aren't covered under Sarbanes-Oxley. But notably, then, that doesn't apply for internal reporters in those groups under Petitioner's Reading. So even though Congress would have singled out those people and said these people should be protected from making internal disclosures, they would actually have no legal protection at all if they didn't first report to the SEC, which, again, is contrary to even the regulated stakeholder's interest in this very setting. We know from the Chamber of Commerce, who submitted elaborate comments during the notice-and-comment process, that the policy touchstone of Dodd-Frank, and I think this goes a little bit, too, to Justice Breyer's question, should be preserving internal compliance systems. I'd like to talk about that notice-and-comment period for just a moment. It seems to me you've got this plain language problem, so you've got to generate an ambiguity. That's the first step of your move. And the second step is that the SEC has reasonably resolved that ambiguity and that we should defer to it. But here, the notice-and-comment period provided notice that we're going to issue rulemaking with respect to whistleblowers who report to the Commission. Then the rule comes out and says, reporting to the Commission is not required, in an Ipsy-Dixit unreasoned opinion. One line, basically. And then we have two circuits that actually gave deference to that interpretation. Now, that seems to me to put the whole administrative process on its head, because you're providing no notice to people, no reasonable opportunity to comment. Maybe a few people spot the issue, but most people don't. The agency acts without the benefit of the notice-and-comment and is unable to issue a reasoned decision-making, and then we're supposed to defer to that to resolve this ambiguity? Help me out with that scheme. That just doesn't quite hold together for me. Let me try to break it down into a number of steps. First, to be clear, I think we win under the better reading of the statute. We don't even need any deference at all. But to go through the steps, on page 70,511 in the Federal Register, the agency specifically asked for comments about whether to broaden or change the definition of whistleblower for purposes of the anti-retaliation. But it said to the Commission, for reports to the Commission. That language is in there, too, right? Well, that language is in the initial rule. It also suggested that you could qualify under the whistleblower protections without satisfying all the manners of reporting to the Commission. So I think there actually was some ambiguity there. And again, the SEC specifically requested comments on that exact issue. Three people did comment on it and suggested that it should make clear, the SEC should make clear, that internal whistleblowers are covered. The Association of Corporate Counsel implied that they just assumed that, and this is a pretty big group, they assumed that internal whistleblowers were covered. There's not a single comment out of the 250 or so that were submitted that suggested that internal reporting would not be protected under Dodd-Frank. And I think that's telling, because I don't know any corporation, while they were strongly urging the Commission. If it's not fairly put to the notice, is it any surprise that many people don't comment on it? Well, Your Honor, we disagree that it wasn't fairly put to the notice because they specifically requested comments on exactly this topic. That's generally considered enough. And for the reason of explanation, we think they did provide a sufficient basis, certainly as strong a basis as the agency provided in the Long Island case. But I also want to make another point that I think goes back to the original definition of whistleblower, and I do think this is important, and it shows that what Congress really had in mind with A-6 had nothing to do with the anti-retaliation provision. The sentence does not end with the notice of the whistleblower. But it does end with paragraph 42, I assume, is what you're referring to, right? And the language that precedes paragraph 42. Should the anti-retaliation protections, yada, yada, yada, apply broadly to any person who provides information to the Commission concerning a potential violation, right? Your Honor, but again, should we broaden it to the Commission? Yes, but to the Commission, right? Your Honor, part of the logical outgrowth test, which I think this Court has effectively endorsed, but I think there's some lack of clarity there, too, it doesn't require that the exact proposal be endorsed. Breyer. No, but his point, really, I think, is that notice which says we're going to include who counts as providing information to the Commission does not put people on notice that they are including, going to apply it to people who don't provide information to the Commission. I mean, that's English, I would think. Now, that's the question. That's why I actually found your argument below, perhaps, but you've abandoned that, right? Now we're just back at a — if I find this sort of interesting, your argument below, I'm out of luck, it's abandoned, gone, right? Your Honor, the — I think the argument that was accepted by the Ninth Circuit below didn't suggest that the SEC was saying that if everybody— No, no, but I mean, I ask that, first, I want you to answer Justice Gorsuch's question. Second, I just wonder separately whether I am just bound by what seems to be your concession. I guess I am, that the argument below is abandoned. Your Honor, I think that you can affirm on any ground that's present in the record. So if you think that that's the better reading of it, then we would warmly embrace it. Justice Gorsuch, I think that — I think, again, that the logical outgrowth test would assume that in a proceeding— And again, what's reasonable about saying X and then doing not X, or the opposite of X, and then doing it in an Ipsy-Dixit one-line sentence that's unreasoned and wouldn't normally get much deference from us in the first place? How does all that get you Chevron? The key issue in the proceeding was how do you deal with the interaction between internal reporting and preserving internal compliance mechanisms, and the anti-retaliation provision, and making sure that the award program makes sense? So I think the interaction of those things suggests that while corporations thought we need to preserve internal compliance, so we need to make sure that people first report internally and give corporations a chance to fix the problem, the necessary counterpart to that is people have to be protected when they internally report. It doesn't make any sense to say that people have to engage in internal reporting, yet they are unprotected when they do that. I would like to get to the A-6. Again, the definition section does not end by saying the report has to go to the commission. It says in a manner established by rule or regulation by the commission. And I think that's important because Congress realized that the commission needed to prevent the situation where the SEC has a big enforcement award and everyone comes out of the woodwork and they all claim an entitlement to part of that award. The manner established by the commission ensures that there is a simple, easy way to track exactly who is eligible for award and who is not. Congress did not need to limit the anti-retaliation section to whether a whistleblower filled out the right form or faxed a form to the exact right number, even if they provided information to the SEC, accomplishing the core objective of the whistleblower litigation legislation in the very first place. Ginsburg. May I just ask whether Summers, was there any reason he didn't report to the SEC? He – I think it just simply did not occur to him at the time. And so – and in the same way that he missed the limitations period for the Sarbanes-Oxley claim. What he tried to do was do the right thing and to honor the corporate code of conduct by calling the misconduct to a supervisor's attention, which, again, is exactly what all the corporate stakeholders, you know, in this proceeding have said is their goal, too. No one thinks it's better to have reports go directly to the SEC unless the corporation is entirely unwilling to remediate and address the problem. So I – again, it's consistent with the natural regulatory scheme in Sarbanes-Oxley, and Dodd-Frank is not passed in a vacuum. Dodd-Frank is part – and Sarbanes-Oxley work together. They each amend provisions of the Exchange Act. So I don't think it – I think it's highly odd to say that in Dodd-Frank, Congress wanted to create a heavy incentive not to report internally, but in Sarbanes-Oxley, Congress was focused intently on internal reporting, and especially internal reporting of lawyers and auditors. So under my friend's reading, Dodd-Frank would leave those critical groups, the groups that this Court in Lawson v. FMR recognized were best equipped to spot and detect and prevent fraud, out of these critical protections after Congress recognized that Sarbanes-Oxley had been ineffective in getting lawyers and auditors and other employees to report internally. This is critical whistleblower protections, and we don't see any basis for carving those groups out of the statute. If the Court has no further questions. Roberts. Thank you, counsel. Mr. Michel. Mr. Chief Justice, and may it please the Court. The statutory definition of whistleblower is tailor-made for the awards program, but it does not fit in the retaliation programs. Giving the term its ordinary meaning in the retaliation context would harmonize the statute and avoid the anomalies that would result from wouldn'tly applying the statutory definition. Some of those anomalies have been discussed already by the Court, but I do think the most drastic one is that applying the statutory definition, which requires reporting to the commission, into Clause 3 of the retaliation provisions, which protects internal reporting, would decouple retaliation liability from the act that causes the retaliation, and moreover, it would make employers liable for conduct that they don't know about. Now, that, in our view, would be a one-of-a-kind retaliation provision in the U.S. Code. So, Mr. Michel, I do think that that's a real anomaly, and I also think if you really look at the way this statute came to be, it's quite possible the way this provision gets in very late in the game, that they didn't know that they forgot about this definitional provision, and they were meaning it more in the ordinary language sense. But there you are, you have this definitional provision, and it says what it says, and it says it applies to this section. And you have to have a really, really severe anomaly to get over that. So what makes it rise to that level? It's odd, it's peculiar. It's probably not what Congress meant. But what makes it the kind of thing where we can just say we're going to ignore it? So, Justice Kagan, I direct you to the Lawson v. Sewanee Fruit case, which I think is often cited as a canonical case on statutory definitions. That was a workers' compensation case, and the statute included the term injury, which was defined, understandably enough, for workers' compensation case as injury on the job. But there was a provision in which the employer was relieved from liability if the employee had a preexisting injury. And the Court said if you apply the statutory definition to that preexisting injury and require that injury to be on the job, that would be anomalous, because it would unfairly assign liability to the employer, and it would deter the statutory purpose of keeping employers from retaliating against disabled employees. So I think that decision is analogous here. You would deter employers from — excuse me, you would unfairly apportion liability to employers based on conduct that they don't know about, and you would take out the premise of the retaliation provision because the very conduct that is an element in the retaliation claim reporting to the commission is different from the conduct for which they retaliated against the employee. Alitoso, this sort of thing will come up in other cases in which the government is involved. And do you want us to write an opinion that uses the terminology that you just used? So you have a statute with — that uses a particular term, and there's a definitional provision in the statute. And what we write is that the definition in this statute doesn't apply if it produces an anomaly. Is that the standard? That's all you need to get out of the definitional provision? I think, you know, if you look at Sewanee Fruit, for example, the Court talked about incongruities. It talked about undermining the purpose of the statute. If you look at the public utilities case, the Court talks about undermining the purpose of the statute. I thought the stock phrase was absurd, that if the statute gives a definition, you follow the definition in the statute, unless it would lead not merely to an anomaly, but to an absurd result. Justice Ginsburg, I don't think that, with respect, I don't think that's the statute. I think that's the standard the Court has applied. In fact, in all of the cases we cite, starting with Sewanee Fruit and public utilities And to any degree, you don't have an absurdity here. I mean, the government concedes that subsection 3 would cover a subset of cases, maybe not as much as the government would like, but it's not an absurd reading, right? We're not arguing that it's absurd. That's correct, Justice Gorsuch. It would, however, I do want to stress how narrow the meaning that would be left for clause 3 is. Well, but I mean, it's not just that it's not absurd. It seems to me, if you look at utility error, it has to be not absurd or anomalous, whatever you want to say. It has to be cut very broadly. I mean, if you get to a tiny little thing and you're saying, well, the definition doesn't work there, it's one thing to say, well, then we're not going to apply it to that provision. The cases where you're allowed to move beyond the defined term are when, if you stick to it, it really makes a mess of the whole thing. I agree, Mr. Chief Justice, but I think it's a pretty big mess that the Petitioner's reading is making here. In addition to the anomalies we've already discussed, I do think a very important one is that Petitioner's reading would eviscerate the incentive for internal reporting. Keep in mind, Petitioner wants to import the entire region. Well, counsel, you might have an argument there if there weren't Sarbanes-Oxley as the backdrop, but there is. And so the Chief Justice's point and Justice Breyer's point is that if it were to make a hash of the entire statute and there would be meaning, no meaning at all, maybe, maybe. You don't even allege that here. Well, let me try two responses, Justice Gorsuch. First of all, I think it's quite clear that what Congress was trying to do in Dodd-Frank was bolster the remedies that were available under Sarbanes-Oxley. That's why I ask. But we don't follow what they're trying to do. We follow what they do do, right? Well, they did. You agree with me on that? Absolutely. All right. And what they did do was change the statute of limitations from 6 months to 6 years. They changed single back pay to double back pay. Do you want to comment on the notice and rulemaking procedures here and its reference to how much deference we owe? Again, I'm just stuck with the absence of any fair notice, an Ipsy-Dixit decision without any reasons that wouldn't normally pass muster under the APA. And then we have two circuit courts that nonetheless thought that it was appropriate to defer to that, which seems to me allowing an agency to swallow a large amount of legislative power and judicial power in the process, giving up our opportunity to interpret the law as it is. So I just start with a small correction, which is the court of appeals in this case actually primarily interpreted the statute. It did both. It did both. And the other court relied exclusively on Chevron. So here we are. That's right. I think I would also point out that, you know, this procedural deficiency argument has a serious procedural deficiency of its own. It's not making an invalidity argument. It's asking for deference, as your friend pointed out, which is a different animal. It's true. I do want to go to the merits of that, but as you're, you know, reading from the notice of proposed rules of making, I do want to point out that it's the Supreme Court that's doing this in the first instance. No court in this case or any other case has consulted this before. But if you want to look at it, I do think Petitioner pointed to what we think is the I think it points out, you know, as my friend read, the commission is seeking comments on whether it should promulgate rules regarding the implementation of this section. Should application of the retaliation provisions be limited or broadened? I think the fact that several comments Who provides information to the commission? That's kind of an important little phrase there. Right. I agree with that. And I'm not saying that it couldn't have been written more clearly. I do think if you look at I think it was written very clearly. Well, I think if you look, actually, Justice Gorsuch, at the Long Island Care case, which I think is probably this Court's leading case on the logical outgrowth test, it ultimately says that, you know, proposing X and getting not X is enough to satisfy the logical outgrowth. Now, maybe that's not logical, but that is the, you know, the Court's precedent in this area. And I think we certainly satisfy that test here. Sotomayor How much are you relying on just Chevron deference here? That's not even our principal argument. We're certainly happy to have Chevron deference if you find the statute ambiguous. But we think you can resolve this without Chevron deference, simply as the Ninth Circuit did in its primary holding, by saying that we have the best reading of the statute. I think a number of the lower courts have done that, too. There's a district of Nebraska opinion that we cite that I think is particularly helpful in evaluating the statute. Would you agree, though, that a notice and comment rulemaking that didn't provide fair notice shouldn't be deferred to? I think Encino is some support for that, although this Court has never taken the additional step of saying that the failure to meet the logical outgrowth test, as distinguished from the inadequate explanation. Roberts Well, just hypothetically, let's say whatever your logical outgrowth test is, it fails to meet that, okay? No notice, no adequate procedures. Should courts defer to that as the law? Again, I think there's a lot of, you know, preliminary questions you'd have to answer about timing and everything else, but in a properly presented challenge, that you wouldn't be able to defer to that. I'll agree with that, Justice Breyer. Breyer We would not be able to defer. Roberts Correct. But I don't think that's the case for a lot of the reasons that have been discussed. Breyer I would be wary of the government conceding that point. I would be wary of that because I don't know what implications it has for other cases where, in fact, you start chipping away in an unforeseen way. I mean, maybe. I can think of a lot of reasons for not deferring to the rule here. Among others, it doesn't refer to manner. There's nothing in there about manner that I could find. I could think of reasons. But I'm just saying that is not necessarily what you just said, a lifetime concession on the part of the government, is it? No, it is not. I do want to try to get back to the point about internal whistleblowing. And internal reporting, which I think is something that there's a unity of interest from employees, employers, and the commission. And my friend ---- Sotomayor So why don't you give an award for that? May I answer, Mr. Chief Justice? We do actually give an award for people who report internally if the company then reports to the commission and the person then reports within 120 days. So the rule does reflect that principle. Sotomayor You only give it if they report to the SEC. They have to ultimately report to the SEC within 120 days. Roberts Thank you, counsel. Mr. Chamnagam, seven minutes. Chamnagam Just two quick points on rebuttal, and thank you, Mr. Chief Justice. The first with regard to these cases concerning statutory definitions. I think if you look at the cases cited by Respondent and the government, most of those cases are cases in which either the terms of the statutory definition are ambiguous or in which the reach of the statutory definition is unclear, whereas here both the terms and the reach of the statutory definition are unambiguous. This Court has refused to give effect to a statutory definition only where it would lead to absurd results. And to be sure, many of those cases are pre-1986 cases. They do not use the term absurdity, but they sound an absurdity. And the perfect example of that is Mr. Mischel's favorite case, Lawson v. Sewanee Fruit. That was a case in which if the statutory definition of disability were given effect, an employer would be liable for the entirety of an employee's disability even if the previous partial disability occurred when the employee was not on the job. And the Court said that that would lead to obvious incongruities in the language and destroy the very purpose of the statute. So again, that's absurdity by any other name. And to the extent that Respondent and the government seem to suggest that absurdity is not required here, I would submit that it would be a very odd regime of statutory interpretation if this Court were to apply a different standard to unambiguous language in a statutory definition from the standard that it applies where you have unambiguous language anywhere else, if anything, where Congress provides a specific statutory definition, that ought to be given effect and more respect rather than less. And to the extent that there may be some incidental overbreath with our interpretation because one could posit a hypothetical in which there's really not a nexus between the internal report and the report to the SEC, I would respectfully submit that this case is a lot like the Court's last whistleblower case, Lawson v. FMR, where the Court said that incidental overbreath, the mere fact that one could think of hypotheticals involving gardeners, nannies, and housekeepers in the words of the Court, is not enough to invalidate an interpretation, particularly where the contrary interpretation suffers from a similar deficiency, the wild overbreath to which I referred in my opening. And my second point is just a brief point on the procedural issue concerning the rulemaking here. I think Justice Gorsuch put his finger on the exact language in the proposed rule that makes clear that the SEC was operating from the premise that reporting to the Commission was required. And to the extent that the Commission asked whether the application of the anti-retaliation provision could be limited or broadened, it was asking about limiting or broadening it in other ways, such as by adding the same requirements, the procedural requirements that apply to eligibility for the award provisions, to the anti-retaliation provision as well. And it is certainly true, as Mr. Geiser said, that this Court and lower courts have often asked whether the final rule is somehow the logical outgrowth from the proposed rule. But in the words of Judge Randolph from the D.C. Circuit, something cannot grow out of nothing. And where there is nothing in the proposed rule to put interested parties on notice that an agency is considering a particular interpretation, it would be the height of inequity to uphold a rule and to afford deference to the agency in those circumstances. In our view, the SEC's interpretation here was procedurally improper as well as substantively invalid. And for that reason and the other reasons set out in the briefs, the judgment of the Ninth Circuit should be reversed. Thank you. Roberts. Thank you, counsel. The case is submitted.